UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ESCOBEDO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCK SHARP & DOHME LLC, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-10394-MEMF-MAR<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART REQUEST FOR JUDICIAL NOTICE [ECF NOS. 18, 19]** |

Before the Court are a Motion to Dismiss (ECF No. 18) and a Request for Judicial Notice (ECF No. 19) filed by Defendant Merck Sharp & Dohme LLC. For the reasons stated herein, the Court GRANTS the Motion to Dismiss and GRANTS IN PART AND DENIES IN PART the Request for Judicial Notice. The Court will DISMISS the claims against Defendant Merck Sharp & Dohme LLC WITH LEAVE TO AMEND.

## BACKGROUND

### I. Factual Allegations[1]

Plaintiff Sarah Escobedo ("Escobedo") is an individual residing in Los Angeles, California. *See First Amended Complaint,* ECF No. 16 ("FAC") ¶ 10. Defendant Merck Sharp & Dohme LLC ("Merck") is a New Jersey limited liability company and Defendants Does are Merck's affiliates and agents that are currently unknown to Escobedo. *See id.* ¶¶ 11–12. Escobedo brings this claim on behalf of herself and all individuals in California who used a search bar feature on Merck's website, www.merck.com (the "Website"), and without their consent, had their search queries transmitted to third parties within the statute of limitations period. *See id.* ¶¶ 1, 37.

Merck, a well-known and leading pharmaceutical company, operates the Website, which is used by millions of Americans to research information about medications and health conditions. *See id.* ¶ 14. The Website "deliberately and systematically" maintains and markets to a userbase of California healthcare providers and patients by providing California-specific information regarding drug prices and healthcare provider resources. *See id.* When using the Website, users first are presented with a "cookie policy" that states "Your Privacy Choice Is Important to Us" and allows individuals to choose what personal data may be tracked or shared; for example, when Escobedo accessed the Website, she chose to share only "essential" and "functional" cookies. *See id.* ¶ 21. Still, the Website uses embedded tracking software to identify and market its users to third-party entities, such as LinkedIn, Google Ads, DoubleClick and Twitter Ads. *See id*. ¶¶ 16–17. These third-party entities send "GET" requests to intercept communications between the Website and its users and retrieve data from a user's search result page. *See id*. ¶ 17. The Website then automatically

---

[1] The facts described here are derived from Plaintiff Sarah Escobedo's First Amended Complaint ("FAC"). FAC. For the purposes of the Motion to Dismiss, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

provides the search terms in file format to the third-party entities. *See id*. These tracking mechanisms are "cookieless" as to not trigger the cookie policy. *See id*. ¶ 21.

Escobedo visited Merck's Website on September 4, 2024, chose to share only essential and functional cookies, and searched "work from home jobs California[,]" all the while believing she had a choice about data collection and sharing to third parties. *See id*. ¶¶ 23–25. Escobedo's browsing session was recorded in an HTTP Archive file, which provided a digital record of communications between networks, and the analysis of the file showed a variety of data points, including the URL with Escobedo's search terms, tracking pixel IDs, tracking identifiers, device data, etc., were shared with different third-party entities. *See id.* ¶ 18. The Website circumvents privacy controls while still maintaining a façade of user choice via the following data collection techniques: (1) "cookieless" tracking, (2) server-side data collection, and (3) real-time data synchronization. *See id*. ¶¶ 31–32.

**II. <u>Procedural History</u>**

Escobedo filed suit in the Los Angeles County Superior Court on October 30, 2024, and served the Complaint to Merck on November 4, 2024. *See* ECF Nos. 1-1–1-2. Merck filed a Notice of Removal on December 3, 2024. *See* ECF No. 1. Escobedo filed her FAC on January 30, 2025. *See* FAC. The FAC asserts two causes of action: (1) a California Penal Code § 631 claim for violation of the California Invasion of Privacy Act ("CIPA"); and (2) a California Business and Professions Code § 17200 claim for violation of California's Unfair Competition Law ("UCL"). *See id.*

Merck filed the instant Motion to Dismiss and Request for Judicial Notice on February 13, 2025. *See* ECF Nos. 18–19. Escobedo filed her Opposition to Merck's Motion to Dismiss on February 28, 2025. *See* ECF No. 22. Merck filed its Reply and a Notice of Supplemental Authority in support of the Motion to Dismiss on March 26, 2025. *See* ECF Nos. 23–24. The hearing (the "Hearing") for the Motion to Dismiss was held on April 17, 2025.

After the Hearing, the Ninth Circuit issued an en banc decision in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc), overruling precedent relevant to this matter. As such, on April 22, 2025, the Court ordered the parties to file supplemental briefing addressing the effect of the *Briskin* en banc decision on the issues to be decided in the Motion to Dismiss. *See* ECF No. 27. The issue was fully briefed on May 14, 2025. *See* ECF Nos. 32–34.

## REQUEST FOR JUDICIAL NOTICE (ECF No. 19)

### I. Applicable Law

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). A court must judicially notice facts when a party requests it and supplies the court with the necessary information. Fed. R. Evid. 201(c). Still, a court need not take judicial notice of documents or facts that are not relevant. *Flick v. Liberty Mut. Fire Ins. Co*., 205 F.3d 386, 392 n. 7 (9th Cir. 2000); *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n. 13 (9th Cir. 1998). Once a fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint may be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). A court considering a motion to dismiss may also take judicial notice of "matters of public record," "but not of facts that may be subject to reasonable dispute." *See id.* (citing *Lee*, 250 F.3d at 689). A court considering a motion to dismiss may not, "on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed." *Id.*

A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689–90.

**II. <u>Discussion</u>**

Merck requests judicial notice of the following: (1) four complaints filed by Escobedo's counsel in the Los Angeles Superior Court for different plaintiffs between October 8, 2024 and January 23, 2025 (Exhibits 1–4); (2) one complaint filed by Escobedo's counsel in the United States District Court for the Central District of California for a different plaintiff (Exhibit 5); (3) a letter sent by Escobedo's counsel to Merck referencing Brittney Ramirez, rather than Escobedo (Exhibit 6); (4) the homepage of Merck's Website captured on January 9, 2025 (Exhibit 7); (5) the fact that Brittney Ramirez had four cases in the United States District Court for the Central District of California alleging violations of CIPA; and (6) the fact that Escobedo's counsel filed at minimum 65 cases in the United States District Court for the Central District of California in less than two years alleging CIPA violations. *See* ECF No. 19; *see also* ECF Nos. 19-1–19-7. Escobedo objects to Merck's request for judicial notice, stating the documents are irrelevant and not appropriate for judicial notice. *See* ECF No. 22 at 1. Notably, Escobedo does not dispute the materials' authenticity. *Id*.

The Court finds it appropriate to take judicial notice of only Exhibit 7, the homepage of the Website. Here, aside from Exhibit 7, the entirety of the documents and facts at issue relate to Escobedo's counsels' history regarding previous clients and previous claims in both the United States District Court for the Central District of California and the Los Angeles Superior Court. *See* ECF No. 19; *see also* ECF Nos. 19-1–19-7. All these documents are used to support Merck's argument that Escobedo failed to state a claim, but, as explained in detail below, this Court determines that it lacks jurisdiction over the claims against Merck, and accordingly, it does not address the arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6). As such, these documents and facts are not relevant to the question of personal jurisdiction, and the Court declines to take judicial notice of them.

In contrast, Exhibit 7, a copy of the Website's home page captured by Merck's counsel on January 9, 2025, is relevant as the Website's features, content, and structures are central to the issue of personal jurisdiction. Though Escobedo objected to the request for judicial notice on the grounds of relevance, she does not dispute the existence or contents of the webpage. As this webpage is

publicly accessible and undisputed, the Court will take judicial notice of its existence and contents but will not take judicial notice of the truth to the facts asserted in the content. *See Lammey v. CBM Two Hotels, L.P*, No. LA CV20-11432 JAK (Ex), 2022 WL 22805525, at *2 (C.D. Cal. July 8, 2022) (finding a hotel's website and content within the hotel's website appropriate for judicial notice because the documents were publicly accessible websites). The Court GRANTS IN PART and DENIES IN PART this request for the reasons described above.

**MOTION TO DISMISS (ECF No. 18)**

## I. Applicable Law

Under Federal Rule of Civil Procedure 12(b)(2), a party may file a motion to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In the face of a 12(b)(2) motion, "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). In determining whether it lacks personal jurisdiction, a court may consider evidence presented in affidavits and may order discovery on the jurisdictional issues. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), overruled on other grounds as discussed in *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

"However, 'when a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.'" *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Under such circumstances, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010). Although the court may not assume the truth of allegations in a pleading that are contradicted by an affidavit, conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011); *Unocal*, 248 F.3d at 922.

Moreover, when no applicable federal statute governing personal jurisdiction exists, as is the case here, the district court applies the law of the state in which the district court sits. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). Accordingly, the Court looks to "California's long-arm statute [which] allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.* at 1211 (quoting *Daimler*, 571 U.S. at 125); see also Cal. Civ. Proc. Code § 410.10.

Due process allows courts to exercise jurisdiction only over a defendant who has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Personal jurisdiction may be either general or specific. *See Picot*, 780 F.3d at 1211; *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141–42 (9th Cir. 2017); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). The "minimum contacts" test requires a determination of reasonableness by the court by weighing the facts of each case "to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Ct. of Cal. ex rel City & County of San Francisco*, 436 U.S. 84, 92 (1978) (quoting *Hanson v. Denckla*, 357 U.S. 235, 246 (1958)).

**A. General Jurisdiction**

"General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" *Panavision Int'l, L.P. v. Toppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Helicopteros*, 466 U.S. at 414–16), modified, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). The Ninth Circuit has recognized this as "an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); see also *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (noting that the standard for establishing general jurisdiction is "fairly high" and requires contacts "that approximate physical presence"), overruled on other grounds by *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1035 (9th Cir. 2023).

**B. Specific Jurisdiction**

Even if a defendant has not had continuous and systematic contacts with the state sufficient to confer general jurisdiction, a court may exercise specific jurisdiction over the defendant. *Picot*, 780 F.3d at 1211. Specific jurisdiction exists where the claim for relief arises directly from a defendant's contacts with the forum state. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). For a court to exercise specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211.

The plaintiff bears the burden of satisfying the first two prongs of this test. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff does so, the burden then shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair under the third prong. *Id.* The first prong may be satisfied with facts sufficient to show either "purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, 'are, in fact, two distinct concepts.'" *Brayton Purcell LLP*, 606 F.3d at 1128 (quoting *Pebble Beach*, 453 F.3d at 1155). Courts in the Ninth Circuit "generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Morrill*, 873 F.3d at 1142.[2]

---

[2] Here, Escobedo's FAC alleges two intentional torts, and Merck does not contest the characterization of these claims. *See* FAC ¶¶ 43–58; *see generally* ECF No. 18. Accordingly, the Court will apply the effects test to resolve the purposeful direction inquiry.

In the purposeful direction inquiry, courts apply the "effects test," which requires proof that defendant "(1) committed an intentional act, (2) expressly aimed at the forum state,[3] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (internal quotation marks omitted). "[M]ere injury to a forum resident is not a sufficient connection to the forum," and "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). Consideration of the act is limited to whether an "external manifestation of the actor's will" is reflected, and "does not include any of [the act's] results, even the most direct, immediate, and intended." *Schwarzenegger*, 374 F.3d at 806 (internal quotation marks omitted). With respect to the "express aiming" prong of the effects test, "something more" is required than a "foreign act with foreseeable effects in the forum state." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012), overruled on other grounds by *Walden*, 571 U.S. at 277 (internal quotation marks omitted).

## II. <u>Discussion</u>

In the Motion to Dismiss, Merck contends that the Court lacks personal jurisdiction. The Court finds that (1) there is not general personal jurisdiction over Merck and (2) Escobedo has not

---

[3] The Ninth Circuit previously held that this test looks "to the defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there." *Picot*, 780 F.3d at 1214–15 (9th Cir. 2015) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). In Briskin, however, the Ninth Circuit (sitting en banc) held that Walden has been misread:

> *Walden*'s language—that a defendant must have contacts "with the forum State itself"—has been taken out of context, in cases such as the now-vacated panel opinion and *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). We agree that the phrase does not mean that "contacts with a forum's residents, who are in the forum at the time of the contacts, are irrelevant for jurisdictional purposes, because in *Walden* **none** of the parties were in the forum when the operative events transpired."

*Briskin*, 135 F.4th at 759.

adequately pleaded facts that are sufficient to establish specific personal jurisdiction over Merck.[4] As the set of facts for both the CIPA claim and the UCL claim rely on the Website's content and functionality, the same analysis applies to both.

**A. The Court does not have general jurisdiction over Merck.**

The Court does not find general jurisdiction over Merck based on the facts before it. The Supreme Court has explained that the "paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at 118. Merck is a New Jersey limited liability company with its principal place of business in New Jersey. FAC ¶ 11. While these are not the only ways to find general jurisdiction over a company, it is rare for general jurisdiction to be satisfied in other ways. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (noting that outside of these two forums, general jurisdiction is only established in an "exceptional case" where "a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State'"); *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (explaining that "*Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation"). Here, Escobedo only argues that the Court has specific personal jurisdiction over Merck and does not provide any facts on general jurisdiction. Accordingly, the Court declines to find general jurisdiction over Merck.

**B. The Court does not have specific jurisdiction over Merck.**

The Court does not find specific jurisdiction over Merck based on the facts before it as the first prong—purposeful direction—is not met. Because Escobedo argues Merck established sufficient minimum contacts by committing an intentional tort in California (thus, rendering the

---

[4] Though Escobedo argues Merck only disputes personal jurisdiction as to the CIPA claim because Merck refers to "claims relating to Merck's website search bar[,]" it is clear that Merck is disputing personal jurisdiction to both claims. *See* ECF Nos. 22 at 15, 18 at 7–10. The UCL claim relates to the Website's privacy policy in conjunction with the data shared via the search bar feature. *See* FAC ¶¶ 49–58. Further, Merck specifically mentions "claims" in the plural form. *See* ECF No. 18 at 7.

effects test unnecessary), the Court will clarify why it is applying the effects test.[5] *See* ECF No. 22 at 15–17; *see also Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985). The rule Escobedo sets forth applies to non-resident tortfeasors when they voluntarily and temporarily enter the forum state and commit a tort within it. *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 606 (9th Cir. 2018). In contrast, the effects test is used for out-of-state tortfeasors and "focuses on the forum in which the defendant's actions were felt." *Herbal Brands v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023) (internal quotation marks omitted).

Here, Merck is located in New Jersey and its activities that allegedly caused Escobedo harm occurred via its Website. *See* FAC ¶¶ 11, 15–21. The Ninth Circuit has consistently applied the effects test to similar scenarios. *See Briskin*, 135 F.4th at 751*; see also Will Co. v. Lee*, 47 F.4th 917, 922–26 (9th Cir. 2022) overruled on other grounds by *Briskin,* 135 F.4th 739; *see also Mavrix Photo*, 647 F.3d at 1229–31. Even the cases Escobedo cited in her Opposition applied the effects test. *See* ECF No. 22 at 16–17; *see also Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 741–42 (N.D. Cal. 2023); *see also Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 925–29 (S.D. Cal. 2022); *see also WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 669–73 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021); *see also Fudge v. Delta Air Lines, Inc.*, No. 2:24-cv-04531 HDV SSC, 2024 U.S. Dist. LEXIS 185143, at *8 (C.D. Cal. Oct. 4, 2024).

At the Hearing, Escobedo's counsel contended that *Paccar* provided the appropriate standard as Escobedo is in California and the third-party data collectors are in California, so the collection and transfer of data must have occurred in California. Escobedo's counsel likened the facts here to those of *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770 (1984). There, the Supreme Court determined the out-of-state defendant conducted a regular part of its business in the forum state via its magazine

---

[5] In her Opposition to Merck's Supplemental Briefing, Escobedo applies the effects test, rather than the *Paccar* standard. *See* ECF No. 33. Still, as Escobedo did not explicitly concede the effects test is the proper method of analysis and previously argued against its use, the Court will still address the matter.

sales.[6] *Id*. at 772. As the plaintiff lived outside the forum state and filed a multistate claim in the forum because of its favorable statute of limitations, the Supreme Court wanted to ensure the action was reasonably connected enough to the forum state so that it would not be unfair to hale the defendant into court and it would not implicate due process concerns. *Id*. at 776–81. Notably, the Supreme Court discussed where the tort and harm occurred, as well as the legislative intent of the forum's long arm statute, and ultimately held that the exercise of personal jurisdiction was proper because a victim of any tort may sue a defendant in any forum where the defendant has sufficient minimum contacts so that the suit would not "offend 'traditional notions of fair play and substantial justice.'" *Id.* at 780–81 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940) and *Int'l Shoe Co.*, 326 U.S. at 316). While it follows that it is *possible* for the conduct alleged here, though engaged in by an out-of-state defendant, could give rise to an in-state tort claim, *Keeton* by no means stands for the proposition that the effects test should not be applied to allegations of an out-of-state defendant engaging in an in-state tort.

Due to the variety of interpretations of the *Paccar* decision, the *Freestream* court took great care to explain when the *Paccar* rule is applicable, clarifying it generally applies to defendants who are *physically* in the forum state. The court states, "judgment in personam against a non-resident, who has only passed through its territory, [is proper] if the judgment be upon a liability incurred while he was within its borders." *Freestream*, *905* F.3d at 606 (quoting *Kilpatrick v. Texas & P.R. Co.*, 166 F.2d 788, 791 (2d Cir. 1948)) (internal quotation marks omitted). "This principle is most frequently encountered in cases involving torts committed by nonresidents while temporarily in the state." *Id.* (quoting Judge Beverly Reid O'Connell and Judge Karen L. Stevenson, Federal Civil Procedure Before Trial ¶ 3:161–162 (Rutter Group Nat. Ed. 2017)) (internal quotation marks omitted). The court's case illustrations show that "within its borders" and "temporarily in the state"

---

[6] To clarify, the FAC does not allege or provide facts to support Merck carries on a "continuous and systematic, but limited, part of its general business" in California that is related to Escobedo's injury. *Keeton,* 465 U.S. at 789 (quoting *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 438 (1952)) (internal quotation marks omitted). Rather, it appears to the Court that Escobedo cites this case to illustrate that harm by an out-of-state defendant can cause a tort occurring within the forum state and support the application of *Paccar* to the facts at hand. *See id.*

refer to a physical, voluntary presence in the state. *See id.* (comparing the effects test to the *Paccar* rule and noting the court's use of the effects test in previous decisions never "involved an alleged tort committed while the defendant was physically present in the forum state"); *see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 , 1209 (9th Cir. 2006) (applying the effects test to an out-of-state defendant's conduct, but specifically excluding the contacts that occurred *within* the forum from the effects test); *see also Morrill*, 873 F.3d at 1148 (finding a defendant's physical presence while committing a tort must be voluntary in a forum to give rise to the *Paccar* rule).

Though there is not binding precedent that matches the facts here exactly, the Ninth Circuit has ruled on an analogous fact pattern since *Freestream*. In *Briskin*, it was alleged that an out-of-state defendant extracted data from an individual located in California and then shared this data with third parties. *Briskin*, 135 F.4th at 746–49. There, the court used the effects test, rather than the *Paccar* rule, to determine whether jurisdiction was appropriate. The facts here are similar to those in *Briskin*: in both cases, the plaintiff is in the forum, suffering the alleged harm within the forum, and the defendant is an out-of-state actor who allegedly violated CIPA by collecting data from the plaintiff's use of a website. Accordingly, it is proper for this Court to follow the guidance provided by *Briskin* and apply the effects test.[7]

1. <u>Escobedo has pleaded facts showing Merck engaged in intentional action.</u>

Here, there is no real dispute as to the first element of the effects test, intentional action. The FAC provides that Merck operates the Website, embedded code that allows third-party interception of search queries on the Website, and in turn collected and transmitted user data. *See* FAC ¶¶ 1, 4, 6.

---

[7] Escobedo's counsel also stated that the reason the precedential cases relied on the effects test is because none of those cases involved a plaintiff and third party both located in California and therefore, the data transmission did not occur in California. While there are is no binding authority with these exact facts, two of the nonbinding district court cases Escobedo cited in her Opposition include fact patterns where the plaintiffs and third parties were California residents or had their principal place of business in California and the courts still applied the effects test. *See WhatsApp Inc.*, 472 F. Supp. at 658, 671; *see also* Complaint at 15, Fudge No. 2:24-cv-04531 HDV SSC, 2024 U.S. Dist. LEXIS 185143. In any event, this Court finds that the binding precedent indicates that the effects test is the proper method for evaluating the facts in this matter.

Such actions are intentional acts. *Will Co.*, 47 F.4th at 922 ("'[O]perating a passive website, purchasing a domain name and purchasing domain privacy services are all intentional acts."); *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1169–70 (C.D. Cal. 2024). The remaining two factors, express aim and knowledge of the likelihood of harm in the forum state, are still at issue. If Escobedo can establish that Merck expressly aimed its activities towards California, it follows that Merck had knowledge of the harm (data tracking) likely occurring in California.

2. Escobedo has not pleaded sufficient facts showing Merck exhibited express aim.

Merck argues that Escobedo's allegations do not show Merck's intentional actions were expressly aimed at California. *See* ECF No. 18 at 7–10. First, the Court must determine what conduct may be considered, as only contacts from which the alleged harm arose are relevant to a specific jurisdiction inquiry. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy.'") Accordingly, Merck's California research facilities and administrative offices (*see* FAC ¶ 15) are not relevant because they have no relation to the alleged harm caused by the online privacy violation. Additionally, the fact that Escobedo and the third-party entities are physically in California (*see id.* ¶ 7) is insufficient, standing alone, because only *Merck's* actions and contacts are reviewed in the specific jurisdiction inquiry. Courts have "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. Therefore, this Court, like other district courts will only look at contacts from which the alleged harm arises from or relates to, specifically, Merck's collection and distribution of user data via its Website.

"[O]peration of an interactive website does not, by itself, establish express aiming." *Herbal Brands*, 72 F.4th at 1091. Rather, operation of a website "in conjunction with 'something more'"

satisfies express aiming. *Id.* at 1092.[8] To determine what constitutes "something more" when so many websites are available to individuals nationwide and worldwide, courts conduct a fact-specific inquiry and incorporate a variety of factors, such as the content of the website's subject matter, the technical method of advertising on the website, profits received from website users' presence or action on the site, website design mechanisms, and legal compliance schemes. *See* Briskin, 135 F.4th at 756, 759 (finding personal jurisdiction where defendant Shopify "expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws"); *Mavrix Photo*, 647 F.3d at 1230–31 (finding personal jurisdiction proper where defendant's website profited off of California residents by publishing forum-specific content and forum-specific third-party advertisements); *see also Will Co.*, 47 F.4th at 924 (finding personal jurisdiction was proper where the defendant used website design strategy to make content load faster in a specific forum and tailored its privacy policy and terms and conditions to that forum).[9]

Notably, a recent Ninth Circuit ruling clarified that websites or publications with national appeal do not require a "forum-specific focus" or "differential targeting" to a specific forum to establish express aiming at that forum. *Briskin,* 135 F.4th at 757.[10] Still, differential targeting and

---

[8] Merck relies on orders issued for multiple cases in the United States District Court for the Central District of California where plaintiffs did not allege defendants did "something more" than engaging with individuals located in California on their websites. *See Heiting*, 743 F. Supp. 3d at 1171*; see also Conohan v. Gen Digital Inc,* No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655, *2 (C.D. Cal. Feb. 19, 2025)*; see also Rounds v. Case-Mate, Inc.*, No. 2:24-cv-08531-WLH-RAO, 2025 U.S. Dist. LEXIS 48225, *11–*12 (C.D. Cal. Mar. 14, 2025). The facts in all three cases are distinguishable from the facts at hand because here, Escobedo alleges Merck published California specific career listings and healthcare resources on its Website. *See* FAC, ¶ 6.

[9] Though *Briskin* overruled *Will Co.'s* requirement of a "forum-specific" focus, the *Briskin* court notes that the finding that personal jurisdiction existed based on the facts is still valid. *Briskin*, 135 F.4th at 757 n. 15.

[10] In its Supplemental Briefing, Merck states that differential targeting was not a primary argument, and the *Briskin* decision should not affect the Court's ruling. *See* ECF No. 32. Nonetheless, the Court does not find Merck's other arguments outside of differential targeting persuasive. For instance, Merck argues since it did not reach out to Escobedo, there is no express aiming (*see* ECF No. 18 at 9); however, the Court is not basing its decision on Escobedo's contacts, but rather, is

forum-specific content "may serve as evidence that a defendant expressly aimed its conduct toward the forum state." *Id.* at 758 n.17. Moreover, a defendant's knowledge of its contacts touching a forum has a substantial impact on this analysis. *See id.* at 755–57. For example, in *Briskin*, when the plaintiff viewed items for purchase on a website, a payment processor collected data during his viewing activity and the actual purchase transaction and shared it with third-party data collectors without the plaintiff's knowledge or consent. *Id.* at 747–48. The court determined that personal jurisdiction was proper because (1) the defendant deliberately targeted the plaintiff in California by employing geolocation technology that allowed it to know the plaintiff's device was located in California and (2) these contacts were not random, isolated, or fortuitous as the defendant, in its regular course of business, extracted personal data about California consumers for its own commercial gain while performing payment processing services. *Id.* at 746, 755–57.

Here, Escobedo states Merck markets to website users in California by publishing "California-specific career listings, drug pricing disclosures for California consumers, and healthcare provider resources unique to this state." *See* FAC ¶ 6. Escobedo further alleges that Merck "monetizes" its users' data "through partnerships with the third-party [data collectors.]" *See* FAC ¶ 54.[11] It appears that although Merck's data tracking occurs for all users of the site, regardless of where they are located, Merck is still profiting off California residents that are drawn to the Website via California-specific resources. *See id.* ¶¶ 6, 54.[12] While this conduct goes quite far in establishing

---

solely basing its decision on Merck's contacts to the forum. Further, Merck argues that Escobedo makes conclusory statements that do not meet the pleading requirements (*see id.* at 11); however, Escobedo specifically alleges that Merck posted California-specific resources and profits from its data collection (*see* FAC ¶¶ 6, 50, 54–55, 57–58). Similarly, Merck argues it has done nothing more than operate a passive website (*see* ECF No. 18 at 8); however, the previously mentioned allegations counter that argument. Still, the Court still must determine if Merck's conduct qualifies as "something more" than attenuated, fortuitous contacts.

[11] At the Hearing, Merck's counsel argued there were no allegations in the FAC as to Merck's profiting from its connections to the third-party data collectors. The Court finds various paragraphs in the FAC that state Merck profited from the data collection activities in some manner. *See* FAC ¶¶ 50, 54–55, 57–58.

[12] Escobedo's Opposition includes at least one additional argument based upon facts not alleged in the FAC. *See* ECF No. 22 at 16–17. Though the Court need not consider the additional arguments

express aiming, it does not establish that Merck had knowledge that its regular and deliberate conduct would touch individuals in the forum state, meaning the contacts were more than mere happenstance. *See Briskin*, 135 F.4th 756. This is consistent with cases cited favorably in *Briskin* where there were additional factors present establishing express aim. *See Mavrix Photo*, 647 F.3d at 1230 (finding the defendant expressly aimed towards California via its website's California-specific content and third-party advertisements directed towards Californians given that it knew about the California customer base and exploited it for commercial gain); *Will Co.*, 47 F.4th at 924 (finding the foreign defendant expressly aimed towards the United States given its website's design and legal scheme which were the result of business decisions evidencing an intent profit from a United States audience); *Swarts*, 689 F. Supp. 3d at 742 (finding the defendant expressly aimed at a forum where plaintiff used a website's chat box to discuss products he purchased online that were also available in retail stores in that forum); *Fudge*, 2024 U.S. Dist. LEXIS at *7 (finding personal jurisdiction was proper where defendant regularly conducted business in the plaintiff's forum state and the plaintiff purchased airline tickets on the defendant's website in that state).[13] Here, Escobedo does not allege similar or comparable facts, and alleged on their own, the facts do not illustrate that Merck's contacts are not so random and isolated that it would be fair to hale Merck into court in this forum.

---

outside of the FAC, for sake of clarity, the Court will briefly discuss the additional argument for purposes of determining whether leave to amend would be futile. *See Crews v. Rivian Auto., Inc.*, No. 22-cv-01524-JLS-E, 2023 U.S. Dist. LEXIS 27602, 2023 WL 3050081, at *17 (C.D. Cal. Feb. 16, 2023). Escobedo asserts that Merck transmitted her search results to servers that are in California because they are owned by California entities. *See* ECF No. 22 at 16–17. This is irrelevant because those third parties are not the defendants, and it is the defendants' conduct that is reviewed for personal jurisdiction inquiries. *See WhatsApp Inc*, 472 F. Supp. 3d at 671 (finding jurisdiction proper where defendant sent malicious software to plaintiff's California based server, but noting the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction).

[13] Additionally, during the Hearing, Escobedo's counsel referenced another case recently heard in the United States District Court for the Central District of California where the court held personal jurisdiction was proper. *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025). This case is also distinguishable from the current matter because there, the defendant maintained an interactive website where California consumers could purchase defendant's products directly from the website. *Id.* at *3.

Merck's attempts to distinguish *Briskin* fail. *See* ECF No. 32 at 7–8. For example, Merck points to the fact that in *Briskin*, the plaintiff sued a payment processor rather than the website operator, while here, Escobedo is suing the website operator. *Id.* The Court does not find this distinction meaningful because the gravamen of *Briskin* was not the defendant's identity, but whether the defendant had a business practice of extracting and selling data from individuals it knew were in California. *Briskin*, 135 F.4th at 755– 57. Similarly, Merck's argument that it is a pharmaceutical company, not a data-collection company (*see* ECF No. 34 at 7), is unavailing because the *Briskin* defendant was a payment processing company that also extracted and sold data; thus, Merck's primarily line of business does not preclude it from also being in the business of data collection and extraction (*Briskin*, 135 F.4th at 755). In addition, Merck argues that because individuals cannot purchase from its website, *Briskin* is distinguishable and not useful precedent. *See* ECF No. 32 at 8. This is not so; the *Briskin* court did not address the purchase in its reasoning—which is consistent with the allegations that the installation of the cookies and the tracking occurred well before any purchase was consummated. *See Briskin*, 135 F.4th 755–57. Finally, given the *Briskin* court's disavowal of any requirement for differential targeting, the fact that Merck's website is intended for a national audience (*see* Request for Judicial Notice, Exhibit 7), does not save it.

In conclusion, Escobedo has not alleged Merck is subject to the Court's personal jurisdiction because she has not alleged Merck knew where she was located at the time of extracting her data or that Merck's business model is to obtain and sell data from California consumers. *See Id.* at 756. Although the Court reviews the facts alleged in the light most favorable to Escobedo, in order to survive dismissal, she is still required to allege facts establishing the elements required for personal jurisdiction. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the foregoing reasons, the facts alleged by Escobedo do not establish Merck's "conduct connects [it] to the forum in a meaningful way[,]" and thus does not establish express aiming at California. *Walden*, 571 U.S. at 290. It follows that since Merck did not aim its conduct towards California, it did not know the harm was likely to be suffered there and the purposeful direction requirement for specific jurisdiction is not met. Accordingly, the Court finds that it cannot exercise specific personal jurisdiction in this matter.

3. Escobedo has pleaded facts showing the claims arise out of Merck's contacts.

Outside of the issue of express aim, Escobedo still must establish her claims arise from or relate to Merck's contacts with California. Merck contends that Escobedo's claims do not arise from or relate to any of Merck's alleged contacts with California. *See* ECF No. 18 at 8–10; *see* ECF No. 32 at 11. Merck relies on *Heiting,* in which the court found the defendant's broader contacts with California were not relevant to the jurisdictional issue, and instead the court only looked at the defendant's "role in operating the website as related to the covert collection, processing, and distribution of [the plaintiff's] data." *See Heiting*, 743 F. Supp. 3d at 1171. Here, the Court is not looking at broader contacts, such as nationwide pharmaceutical sales or the location of research facilities and is solely looking at Merck's action in operating the website: Merck published materials related to California and hosted a website search feature that allowed for data collection and extraction. *See* FAC ¶¶ 6, 31–33. Only looking at those limited contacts, these claims arise out of Merck's website configuration because it allows for the extraction of data, and these claims relate to Merck's operation of the website because the extraction of personal data is the type of contact that causes privacy injuries. *See Briskin*, 135 F.4th at 760. Thus, Plaintiff's allegations satisfy the second requirement for personal jurisdiction.

**C. The Court grants Escobedo's request to amend the FAC.**

In Escobedo's Opposition to Merck's Supplemental Briefing, Escobedo provided the Declaration of J. Evan Shapiro ("Shapiro Declaration") which explains that the HTTP Archive file referred to in the Complaint also showed that "the 'consent manager' operating on the Website, OneTrust or 'CoookieLaw,' identified the location of Plaintiff's device during her web browsing session as California." *See* ECF 33-1 ¶ 8. Merck objected to the Shapiro Declaration because (1) it is unsigned and (2) Escobedo uses it as an attempt to sidestep inadequacies in the FAC without properly amending it. *See* ECF No. 35. Escobedo has since submitted a Notice of Errata to provide a signed copy of the Shapiro Declaration. *See* ECF No. 36.

When reviewing a motion to dismiss, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998). Though a court may

consider documents incorporated by reference into a complaint that were either referred to extensively in the complaint or form the basis of the plaintiff's complaint (*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)), the Shapiro Declaration meets neither standard for incorporation so the Court may not consider the allegations.

That said, Plaintiff has requested leave to amend the FAC to include these allegations. *See* ECF No. 33 at 7. A court may grant a party leave to amend its complaint and should do so when justice so requires. Fed. R. Civ. P. 15. As discussed above, the allegations in the FAC do not provide the Court personal jurisdiction over Merck; however, the Court grants Escobedo leave to amend her FAC to provide the necessary allegations as outlined above, if possible. It would appear that the proposed allegations regarding the "content manager's" knowledge of Escobedo's location might go some way to showing sufficient knowledge in support of personal jurisdiction. As such, Merck's objections to the Shapiro Declaration are moot and the Court will not address them.

**D. The Court grants Escobedo's request for limited jurisdictional discovery.**

In her Opposition, Escobedo requests jurisdictional discovery. *See* ECF No. 22 at 22. "Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (internal quotation marks omitted). First, Escobedo requests discovery of the contracts between Merck and the third-party data collectors. Merck contends that post-*Briskin*, its relationships with the third-party entities are not relevant because the discovery will not answer whether Merck knew where Escobedo's device was located and whether Merck collected and shared data for personal gain. *See* ECF No. 34 at 10. The Court disagrees. These contracts may provide additional facts and context as to whether the third-party data collectors have contracted with Merck at all, and if so, whether the contracts show intent to advertise to California residents or if Merck had knowledge of data collection from individuals in California as well as the nature of its business model with respect to data collection. Further, during the Hearing, Merck's counsel indicated there may be no direct contracts with the California-based third-party data collectors; rather, Merck may have indirect relationships with these data collectors via contracts with third-party entities Merck works or worked

with for software and website creation purposes. If there are no direct contracts with the California-based data companies, the underlying contracts with other third-party entities relating to the interception of data collection and the other activities alleged in the FAC may provide the above-mentioned context and answer the questions of (1) whether and how these third-party data collectors are receiving Escobedo's data information and (2) whether Merck is profiting or receiving any sort of commercial value as Escobedo alleges. The Court finds these facts pertinent to the question of jurisdiction.

The jurisdictional request includes additional requests that the Court finds irrelevant: (1) the location of Merck's marketing and technical staff, which would not establish direct aim via the Website, as is required by the facts; (2) the location of third-party servers, which as detailed above is not relevant to Merck's actions; and (3) server logs showing the communication to California servers, which again is not relevant to Merck's actions. *See* ECF No. 22 at 22. As such, the Court grants the request for jurisdictional discovery as to the relationships between Merck and the California-based third-party data collectors that relate to the interception and data collection activities alleged in the FAC, which includes indirect relationships such as that described by Merck's counsel in the Hearing. The Court denies the request as to the other three topics. *See LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022) (finding denial of jurisdictional discovery proper where plaintiff did not provide "any affidavit or evidence substantiating their requests or describing with any precision how such discovery could be helpful to the Court").

The Court GRANTS the Motion to Dismiss for lack of personal jurisdiction but, based on the facts alleged in the FAC, the Court grants Escobedo leave (1) to conduct limited jurisdictional discovery as to the relationships between Merck and the third-party data collectors and (2) to amend her FAC to provide additional facts to establish Merck had knowledge of her location at the time of data collection and is in the business of collecting and sharing data for profit. Because the Court does not have jurisdiction over Merck, it does not address the arguments for dismissal under 12(b)(6).

## CONCLUSION

For the reasons stated herein, the Court ORDERS as follows:

1. Merck's Motion to Dismiss (ECF No. 18) is GRANTED. The claims against Merck are DISMISSED WITH LEAVE TO AMEND.
2. Merck's Request for Judicial Notice (ECF No. 19) is GRANTED IN PART (as to Exhibit 7) and DENIED IN PART (as to Exhibits 1-6 and the two facts provided in the Request for Judicial Notice).
3. Escobedo shall be permitted to take limited jurisdictional discovery of the relationships between Merck and the California-based third-party data collectors that relate to the interception and data collection activities alleged in the FAC, which includes indirect relationships such as that described by Merck's counsel in the Hearing, within sixty (60) days of the date of this Order.
4. Any amended complaint against Merck must be filed within thirty (30) days after the close of jurisdictional discovery. Failure to timely file an amended complaint may, without further warning, result in this action being dismissed.

IT IS SO ORDERED.

Dated: August 20, 2025

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge