Robert Tauler  (SBN 241964)
robert@taulersmith.com
J. Evan Shapiro, Esq. (SBN 218481)
eshapiro@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff Sarah Escobedo*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ESCOBEDO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MERCK SHARP & DOHME LLC, a New Jersey limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-10394-MEMF-MAR<br><br>***DISCOVERY MATTER***<br>***[Assigned to the Hon. U.S. Magistrate Judge Margo A. Rocconi]***<br><br>**JOINT STIPULATION RE: PLAINTIFF SARAH ESCOBEDO'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37 AGAINST DEFENDANT MERCK SHARP & DOHME LLC**<br><br><u>Hearing</u><br>Date:     Wed., May 27, 2026<br>Time:     11:00 am<br>Courtroom:  790 (7th Floor) |

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR

# **TABLE OF CONTENTS**

JOINT STIPULATION ...................................................................................................3

I. PLAINTIFFS' INTRODUCTORY STATEMENT ....................................................3

II. DEFENDANT'S INTRODUCTORY STATEMENT..................................................6

III. DISCOVERY REQUEST AT ISSUE - REQUEST FOR PRODUCTION NO. 25 .....6

   A. Text of RFP No. 25 ...............................................................................................9

   B. Text of Defendant's Objections to the Request......................................................12

   C. Plaintiff's Position ...............................................................................................14

      1. RFP No. 25 Seeks Documents that the Court Deemed to be Relevant to Personal Jurisdiction in the August 2025 Order ..............................................14

      2. Merck's Objections to RFP No. 25 are Boilerplate and Meritless.....................16

      3. Evidence of Merck's Bad Faith in Refusing to Comply With RFP No. 25 .......18

      4. Plaintiff is Entitled to Make a Motion for Sanctions Under Fed. R. Civ. P. 37(b)(2)(A) ...................................................................................................20

      5. An Award of Sanctions Against Merck Under Fed. R. Civ. P. 37(b)(2)(A)(i-ii) Here Would Be "Just" and Relate to the Claims at Issue ......................................21

   D. Defendant's Position ............................................................................................23

      1. Sanctions Are Not Justified Because The August 20 Order Did Not Order The Production Of Documents..............................................................................23

      2. Sanctions Are Not Justified Where This Court Already Denied Escobedo's Motion To Compel Related To RFP No. 25 .......................................................25

      3. Sanctions Are Not Justified Because Merck Did Not Engage In "Bad Faith" Conduct With Respect To The Parties' Discovery Disputes .................................26

         a. Merck Complied With Court Orders In Good Faith .....................................27

         b. There Is No Bad Faith Where Merck's Objections To RFP No. 25 Are Substantive And Proper.............................................................................28

         c. Merck's Request For An Extension Of Time To Serve Responses To Escobedo's Discovery Requests Does Not Indicate Bad Faith....................31

         d. There Is No Bad Faith Where Merck Met And Conferred With Escobedo On Numerous Occasions And Offered To Produce Agreements.................32

      4. Escobedo's Requested Evidentiary Sanctions Are Improper.............................33

2

# JOINT STIPULATION

Pursuant to Local Rule 37-2.1, Plaintiff Sarah Escobedo ("Plaintiff") and Defendant Merck Sharp & Dohme LLC. ("Defendant" or "Merck"), submit the following Joint Stipulation containing all issues in dispute with respect to Plaintiff's anticipated Motion for sanctions under Fed. R. Civ. P. 37(b)(2)(A).

## I.    PLAINTIFF'S INTRODUCTORY STATEMENT

This case alleges that Merck, which sells a large volume of pharmaceuticals to California residents, has embedded code in its website found at www.Merck.com (the "Website") that transmits the data of visitors to "DATA COMPANIES," namely Facebook/Meta, Google, LinkedIn and X/Twitter, including the contents of search queries they run on the website's search bar, without obtaining their consent to do so; this occurs upon use of the search bar on the Website.  Plaintiff's First Amend. Cplt.  (ECF No. 16), attached hereto as Exhibit 1, (the "FAC"), ¶¶ 1, 3-4, 6, 14-22.  Further, Plaintiff alleges that this conduct constitutes unauthorized and nonconsensual eavesdropping or interception that violates California Penal Code § 631(a). Plaintiff also alleges that the Website's cookie banner falsely states that it has allowed a visitor to stop any data sharing with third parties, in violation of California's Unfair Competition Law (UCL), Business & Professions Code § 17200.

The FAC alleged that Merck facilitates the interception of search terms by the DATA COMPANIES for marketing and advertising purposes.  *See* FAC, ¶¶ 16 (explaining that the DATA COMPANIES are "marketing companies"); 26 (referring to the DATA COMPANIES as "third-party advertising networks"); 27 (referring to them as "advertising companies"); 52 (explaining that the consent banner on the Website discusses the Website's use of technologies "for analytics, personalization and ***targeted advertising***"); 54.  The FAC alleges that Merck allows the contents of search queries entered into the Website's search bar to be intercepted for the purpose of "monetize[ing]" them "through partnerships with third-party advertisers" and "targeted ad placements." *Id.*, ¶ 54.

In an order issued on August 20, 2025, the Court granted Merck's motion to dismiss

3

the FAC for lack of personal jurisdiction over Merck, but granted Plaintiff leave to amend the FAC (the "August 2025 Order"). *See* ECF No. 37. Additionally, the Court granted in part Plaintiff's request to take discovery relating to bases for personal jurisdiction over Merck in this matter. *Id.*, at 22:8-12. Because counsel for Merck represented at oral argument on Merck's motion to dismiss that third-party contractors for Merck, rather than Merck itself, handle matters relating to code on the Website that transmitted data of visitors to the Website to some or all of the DATA COMPANIES, the Court expressly granted discovery into the contracts between Merck and the third-party contractors. *See id.*, at 21:1-7. Specifically the Court held that "the underlying contracts with other third-party entities relating to the interception of data collection and the other activities alleged in the FAC" might answer two questions the Court faced in determining its personal jurisdiction over Merck in this action: "(1) whether and how these third-party data collectors are receiving Escobedo's data information and (2) whether Merck is profiting or receiving any sort of commercial value as Escobedo alleges." *Id.*

At the time the Court issued the August 2025 Order, Merck had not revealed the names of the third-party intermediaries between it and some or all of the DATA COMPANIES.

Provided this opportunity for obtaining jurisdictional discovery, Plaintiff served a total of eleven discovery requests on Merck – 7 Requests for Production and 4 Interrogatories. ***This Motion focuses on a single Request for Production, Plaintiff's RFP No. 25.*** That Request demanded that Merck produce (in pertinent part): "Any agreements between [Merck] and any entities regarding online advertising or marketing that are RELATED TO data sent to, held by, or received from any DATA COMPANIES." This request plainly encompasses "the underlying contracts with other third-party entities relating to the interception of data collection" referenced by the Court in its August 2025 Order. Thirty days after Plaintiff served RFP No. 25 on Merck, Merck served its response, which consisted solely of objections and was devoid of either an agreement to comply with any portion of RFP No. 25 or any indication that Merck was open to meeting and conferring

4

regarding the scope of the Request. Further, in its response Merck stated that, "the time for Escobedo to complete the limited jurisdictional discovery allowed by the Court expired, and Escobedo cannot resurrect or fix her defective and time-barred Requests." This constitutes an **unequivocal refusal to meet and confer** over RFP No. 25.

To the extent that RFP No. 25 sought Merck's "underlying contracts with [the] "third party entities," Merck had no basis to object to it. Nor did Merck have any basis to withhold those contracts. Merck apparently did not have sufficient time within the 30 days allotted it by the Fed. R. Civ. P. 34(b) to obtain responsive documents from its client, review them, and determine which were required to be produced. That is why counsel for Merck sought an extension of approximately 6 weeks (for a total of 76 days) to respond to Plaintiff's jurisdictional discovery requests – which counsel for Plaintiff rejected. This apparently caused counsel for Merck to decide to serve objections only in response to RFP No. 25.

Merck's objection-only response to RFP No. 25 and its failure to comply with RFP No. 25 by producing the "underlying contracts with the [ ] third parties" violated the August 2025 Order. The Order **permitted** Plaintiff to seek the contracts through discovery requests, and therefore constitutes an order for purposes of Fed. R. Civ. P. 37(b)(2)(A). Here Plaintiff seeks application of the evidentiary sanctions set forth in Rule 37(b)(2)(A)(i-ii). Their application here would be just, because it would be unfair to allow Merck to obtain dismissal of this action when it has intentionally refused to permit discovery into the "underlying contracts" that the Court believed might contain evidence establishing its personal jurisdiction over Merck.

The Court recently denied Plaintiff's motion to compel, *inter alia*, compliance with RFP No. 25, finding that the motion was untimely. *See* ECF No. 69. The Court reasoned that the 60-day limit Judge Frimpong imposed on jurisdictional discovery implicitly included general discovery cut-off rules. Judge Frimpong's Scheduling Order requires that more than simply filing a motion to compel by the cut-off; it requires that **any discovery sought by such a motion to be obtained by that date**. It would have been impossible within the 60-day window for Plaintiff to obtain discovery through motion practice before this

5

Court. Such a requirement would allow Merck to withhold the discovery on any basis with impunity – *unless Plaintiff is permitted to seek Rule 37 sanctions*. Nothing in either the August 2025 Order, or Judge Frimpong's rules place a time limit on discovery sanctions motions. Further, under Ninth Circuit precedent, Plaintiff need not have brought, let alone succeeded on, on a motion to compel certain discovery before seeking discovery sanctions.

Counsel for Merck Eric J. Bakewell seeks to mislead the Court by asserting in his declaration that Merck simply "offered" to produce the contracts at issue in this Motion to Plaintiff.  Merck did not do so.  There were strings attached, Plaintiff's entry into undisclosed agreements with Merck, or documents that Merck demanded Plaintiff waive her right to obtain.  *See* Decl. of J. Evan Shapiro filed concurrently herewith, at ¶¶ 8-9. Such documents included correspondence relating to a key issue raised by the Court in the August 2025 Order.  Merck's failure to include the correspondence regarding Merck's purported "offers" is an unsurprising attempt to deceive and mislead the Court.

Plaintiff respectfully requests the Court to grant this Motion.

## II.  DEFENDANT'S INTRODUCTORY STATEMENT

Escobedo bizarrely requests evidentiary sanctions after serving discovery that her counsel conceded went far beyond the "limited" jurisdictional discovery the Court allowed. Escobedo rejected Merck's offers to resolve any discovery disputes, lost a motion to compel (including RFP No. 25 cherry-picked for this motion), and failed to timely pursue any available procedural remedy.  Escobedo now recasts her failed motion to compel as a motion for sanctions to resurrect her discovery.  But, evidentiary sanctions are improper absent a prior court order requiring production.  This frivolous motion should be denied.

Escobedo's motion arises from her failure to diligently pursue discovery and her refusal to accept that the Court denied her motion to compel as untimely.  On August 20, 2025, the Court issued an Order: (1) dismissing Escobedo's FAC for lack of personal jurisdiction; (2) permitting "limited jurisdictional discovery;" and (3) requiring Escobedo to complete discovery within 60 days (October 19, 2025) ("August 20 Order").  *See* Declaration of Eric J. Bakewell ("Bakewell Decl."), Ex. 1 at 22:8-12.  The August 20 Order

6

*permitted* Escobedo to seek jurisdictional discovery without imposing any production obligations on Merck or precluding Merck from objecting to any request. Escobedo waited 28 days to serve discovery that admittedly exceeded "limited" jurisdictional discovery. Had Escobedo acted with any diligence (serving discovery promptly, allowing time for meet and confers and motion practice), she would have had ample time to obtain relief prior to the expiration of the discovery period. Merck timely objected on October 17, 2025.

Merck engaged in extensive good-faith meet and confers after the close of discovery, including: (1) in writing from at least October 2025 through February 2026; (2) telephonic conferences on at least October 28, 2025, November 14, 2025, and December 23, 2025; and (3) in-person on January 9, 2026. *Id.*, ¶¶ 8, 10. Merck offered to produce contracts with third-parties identified in the Declaration of Christina LaCreta to the extent such agreements existed and were in effect from October 2023 to the present. *Id.*, ¶¶ 11-12. Escobedo rejected Merck's offers. *Id.*, ¶ 14. It does not suggest bad faith on Merck's part that the parties were unable to reach an agreement.

Escobedo moved to compel on February 18, 2026 (four months after discovery closed). *Id.*, ¶ 15. On April 6, 2026, the Court denied Escobedo's motion, finding it "plainly untimely" because: (1) jurisdictional discovery closed on October 19, 2025; and (2) Escobedo waited until February 18, 2026 to move to compel. *Id.*, Ex. 2. The Court also noted it lacked authority to reopen the discovery period and (critically) that *Escobedo never sought an order extending or reopening the discovery period*. *Id.*, at 4. There were numerous steps Escobedo could have taken. That she chose not to act is her own fault and certainly not a basis for sanctions.

Escobedo now seeks sanctions in connection with RFP No. 25 (part of her denied motion to compel). Escobedo's motion for sanctions fails for numerous reasons. To wit:

- *Escobedo's motion for sanctions is fatally flawed, as a court may not impose exclusionary sanctions under Rule 37(b)(2)(A) absent a prior order compelling production.* The August 20 Order dismissed Escobedo's FAC and granted her leave to conduct limited jurisdictional discovery within 60 days. *See id.*, Ex. 1. It did not order Merck to produce

7

any documents, much less documents purportedly responsive to a request that was not served until September 17, 2025. *Id.* And, a court order requiring production is a necessary prerequisite to invoking exclusionary sanctions. *See Susilo v. Wells Fargo Bank, N.A.*, No. CV 11-1814 CAS (PJWx), 2012 U.S. Dist. LEXIS 195329, *4 (C.D. Cal. Nov. 26, 2012).

- *The Court already denied Escobedo's motion to compel.* On April 6, 2026, the Court denied Escobedo's motion to compel (including RFP No. 25). The Court found that the motion was "plainly untimely" because the jurisdictional discovery period closed on October 19, 2025, Escobedo never asked for an extension of that deadline, and did not file her motion until February 18, 2026. Bakewell Decl., Ex. 2.

- *Escobedo identifies no valid basis on which to assert that Merck engaged in "bad faith."* Merck asserted valid objections to RFP No. 25 as beyond the limited jurisdictional discovery permitted by the Court. Shapiro Decl., Ex. B. Merck also engaged in extensive meet and confer efforts from October 2025 through February 2026. *Id.*, ¶¶ 8, 10. Merck also offered to produce contracts with Team Frontiers, Initiative Media LLC, WordPress, and SHI International, but Escobedo rejected those offers. *Id.*, ¶¶ 11-12, 14. Merck's initial request for an extension of time to respond to the discovery likewise does not indicate bad faith, and Escobedo's speculation about Merck's motives for serving valid objections is wrong and improper. *Id.*, ¶¶ 5-7.

Escobedo seeks grossly disproportionate sanctions and asks the Court to adopt her narrative of events based on Merck's purported failure to produce responsive documents. Escobedo effectively asks the Court to declare that Merck facilitates transmissions to Data Companies for a commercial benefit and as part of its business model and to bar Merck from challenging personal jurisdiction. Of course: (1) the Court previously dismissed Escobedo's FAC for lack of personal jurisdiction; (2) there is no order requiring Merck to produce documents; (3) the Court denied Escobedo's motion to compel; and (4) Merck previously offered to produce the relevant agreements.

Escobedo also claims that Merck should be sanctioned for engaging in meet and confer discussions where it offered to produce agreements with "strings attached." Yes,

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

Merck (through counsel) participated in meet and confer discussions where it attempted to resolve any dispute through compromise to avoid motion practice. *Id.*, ¶¶ 8-12. No, this conduct is not sanctionable as it is common practice for parties in dispute to discuss potential remedies, including each party offering to give something in return for something else. *See ACLU Found. of S. Cal. v. U.S. Immigr. & Customs Enf't*, 705 F. Supp. 3d 1077, 1089 (C.D. Cal. 2023) (recognizing the meet-and-confer process as a tool to facilitate compromise). Indeed, that is the main purpose of meet-and-confers: parties compromise and find a mutually agreeable outcome. *Id*. Painting Merck as a bad actor for not freely agreeing to Escobedo's open season fishing expedition without any compromise from Escobedo or for trying to negotiate an amicable resolution of the dispute is nonsensical.

Escobedo's motion is nothing more than a last-ditch attempt to shift blame onto Merck. She delayed discovery, propounded requests untethered to the permitted jurisdictional discovery, let the discovery deadline pass, lost her motion to compel, and now seeks to punish Merck instead of accepting responsibility for her own strategic missteps. There is no order compelling production, no basis for sanctions, and no evidence of bad faith – only Escobedo's stubborn refusal to accept the consequences of her actions.

## III.    DISCOVERY REQUEST AT ISSUE - REQUEST FOR PRODUCTION NO. 25

### A.    <u>Text of RFP No. 25</u>

### <u>DEFINITIONS AND INSTRUCTIONS</u>

1.    "YOU" or "YOUR" shall mean Defendant Merck Sharp & Dohme LLC, and any other person or entities acting on its behalf, including, but not limited to, affiliated companies, parents, subsidiaries, agents or representatives.

2.    The term "PERSON" or "PERSONS" shall include a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or entity of any sort.

3.    The term "DOCUMENT" or "DOCUMENTS" shall mean any recorded communication, representation or writing as defined by the California Code of Civil

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

Procedure, including originals and duplicates, whether in draft or otherwise, and copies and non-identical copies (whether different from the original because of notes or marks made on or attached to said copies, or otherwise).  It specifically includes all written, typewritten, printed or graphic materials of whatever kind or nature, including, but not limited to, any and all purchase orders, inventories, invoices, receipts, drawings, memoranda, letters, notes, telegrams, publications, contracts, records, papers, books, recordings on tape, magnetic discs, wire or drums, checks, computer files, electronic mail, drafts, money orders, worksheets, working papers, notebooks, diaries, calendars, graphs, charts, screenplays, treatments, business records of all kinds, and similar writings, whether or not in YOUR possession or under YOUR control, no matter how prepared, or by whom, which relate to or pertain in any manner to the subject matter of the request, and all drafts or copies (including non-identical copies) prepared in connection with such documents, whether used or not.

4.    "COMMUNICATION" or "COMMUNICATIONS" shall mean any transmission of information of any sort whatsoever by one or more PERSONS to one or more PERSONS and/or between one or more PERSONS, by any means whatsoever, including but not limited to telephone conversations, letters, documents, telegrams, teletypes, telecopies, written memoranda, e-mail messages, message board postings, and face-to-face conversations.

5.    The term "WEBSITE" shall mean and refer collectively to the website merck.com referenced in the operative complaint for this action.

6.    The Term "USER DATA" shall mean and refer to any and all (a) COMMUNICATIONS by users of the WEBSITE with the WEBSITE; (b) USER SEARCH QUERIES (c) keystrokes, mouse movements, HTTP referrer header (also known as Referrer URL) or web browsing history by or of users of the WEBSITE; and (d) identifying information of users of the WEBSITE, including, but not limited to, IP address, location, email address, first and last name, physical address, title, device information, contact details, username, financial information (account details, payment information),

employment details (employer, job title), geo-location data, and any other data or intelligence linked to a specific user of the WEBSITE.

7. "RELEVANT PERIOD" shall mean and refer to October 30, 2022 through the present.

8. The words "or" and "including," and similar words of guidance, are merely such, and should not be construed as words of limitation; the word "or," for example, shall include the word "and," as appropriate, and the word "including" shall not be used to limit any general category description that precedes it.

9. The term "CONSENT MECHANISM" shall mean and refer to each banner, pop-up, interface, dialogue, setting or other means presented to users of the WEBSITE regarding cookies, data collection, data processing, privacy choices, or terms of service, including but not limited to the "cookie policy" and "Customize my Settings" interface.

10. The term "DATA COMPANY" shall mean LinkedIn, Google, Google Ads, DoubleClick, Twitter, Twitter Ads, X, or any entities acting on their behalf including, but not limited to, affiliated companies, parents, or subsidiaries.

11. The term "TRACKING CODE" shall mean any and all scripts (e.g., JavaScript), pixels, tags, beacons, web sockets, Software Development Kits (SDKs), Application Programming Interfaces (APIs), or other software code or mechanisms embedded in, loaded by, or executed by the WEBSITE that facilitate, initiate, or enable the collection, capture, monitoring, or transmission to DATA COMPANIES of USER DATA.

12. The term "USER SEARCH QUERY" shall mean any and all text, characters, or strings entered by a visitor into any search input field, search bar, or similar functionality on the WEBSITE, regardless of whether the search is executed or submitted by the user of the WEBSITE.

13. The term "RELATED TO" shall include within their meaning "containing," "alluding to," "responding to, "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting," "incorporating," "confirming," "listing," "evidencing," "setting forth,"

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

"summarizing," or "characterizing," either directly or indirectly, in whole or in part. [ . . . ]

**REQUEST FOR PRODUCTION NO. 25:**

Any agreements between you and any entities regarding online advertising or marketing that are RELATED TO data sent to, held by, or received from any DATA COMPANIES or any of their parent or subsidiary companies in effect during the RELEVANT PERIOD.

### B.    Text of Defendant's Objections to the Request

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Merck incorporates by reference its General Objections. Merck objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privileges. Merck further objects to this Request to the extent it seeks confidential and sensitive financial and business information including information subject to a confidentiality order with a third party. Merck further objects to this Request to the extent it seeks information that is not relevant to any claim or defense raised in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Merck further objects to this Request to the extent that it is unreasonably overbroad and unduly burdensome. Merck also objects to this Request to the extent it seeks documents or information obtainable by means less burdensome to Merck or in the possession, custody, or control of others.

Merck objects to this Request as seeking information beyond the scope of the Court's August 20, 2025 Order granting limited jurisdictional discovery regarding the relationships between Merck and the third-party data collectors that relate to the interception and data collection activities as alleged in the FAC. *Id.* at 21:1-7; 21:21-23. This request is not carefully crafted or narrowly tailored to comply with the Court's Order granting limited jurisdictional discovery. Merck further objects to this Request as overly broad, unduly burdensome, and oppressive to the extent the Request seeks "[a]ny agreements" between Merck and "any entities" regarding online advertising or marketing regardless of whether

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS           2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

the documents are applicable to the limited jurisdictional discovery allowed by the Court.

Merck objects to this Request to the extent it seeks documents that are neither relevant to the limited jurisdictional discovery ordered by the Court regarding relationships between Merck and the third-party data collectors nor reasonably calculated to lead to the discovery of admissible evidence regarding the same. The Court granted Escobedo permission to take limited jurisdictional discovery only. Escobedo does not have carte blanche to seek wide-ranging discovery regarding any aspect of Merck's relationship with any entities related to advertising and marketing.

Merck objects to this Request as untimely and as evidencing a lack of diligence on Escobedo's part with respect to pursuing discovery. The Court required Escobedo to complete the allowed limited jurisdictional discovery "within sixty (60) days of the date of [the Court's] Order." *Id.* at 22:11-12. Escobedo waited until September 17, 2025 (28 days after the Court's Order) to serve her Requests which (among other things) are overbroad, unduly burdensome, and way beyond the limited jurisdictional discovery the Court allowed as more fully explained in and throughout Merck's Objections. Merck timely responded to the Requests on October 17, 2025 (30 days after service) as is proper pursuant to Federal Rules of Civil Procedure 33 and 34. As such, the time for Escobedo to complete the limited jurisdictional discovery allowed by the Court expired, and Escobedo cannot resurrect or fix her defective and time-barred Requests.

Merck objects to this Request on the ground that it improperly aggregates multiple discrete categories and subparts within a single request rendering it compound, overbroad, and vague and ambiguous as to the scope of the materials sought and failing to delineate the specific category of documents or the subject matter of the request with reasonable particularity.

Merck objects to the definition of the term "RELEVANT PERIOD" to the extent it requests documents prior to October 30, 2023. This date represents the one-year statute of limitations period applicable to the claims Escobedo previously asserted in this case based on the October 30, 2024 filing date of Escobedo's original complaint. Merck interprets the

13

"relevant period" to begin no earlier than October 30, 2023.

### C.    **Plaintiff's Position**

**THE COURT SHOULD ISSUE EVIDENTIARY SANCTIONS AGAINST MERCK BASED ON ITS OBJECTIONS TO RFP NO. 25 AND ITS REFUSAL TO PRODUCE RESPONSIVE DOCUMENTS THERETO.**

1.    *RFP No. 25 Seeks Documents that the Court Deemed to be Relevant to Personal Jurisdiction in the August 2025 Order*

The August 2025 Order mandates discovery into "the relationships between Merck and the California-based third-party data collectors that relate to the interception and data collection activities alleged in the FAC, ***which includes indirect relationships such as that described by Merck's counsel in the Hearing***…" ECF No. 37, at 22.  This sentence in the August Order references a representation by Mr. Bakewell to the Court that Merck does not have direct relationships with any of the DATA COMPANIES, and that any indirect relationships it has with them are conducted through ***other third-party entities*** with whom Merck works on its software or websites. The Court expressly mentioned the "indirect relationships" in the Order. *See id.*, at 20:26-21:1.

In her assessment of Plaintiff's requested discovery topics in the August 2025 Order, Judge Frimpong made clear that she considered the contracts between the third parties referenced by counsel for Merck at oral argument to be an important part of Plaintiff's jurisdictional discovery:

> If there are no direct contracts with the California based data companies, ***the underlying contracts with other third-party entities relating to the interception of data collection and the other activities alleged in the FAC*** may provide the abovementioned context and answer the questions of (1) whether and how these third-party data collectors are receiving Escobedo's data information and (2) whether Merck is profiting or receiving any sort of commercial value as Escobedo alleges.

14

The Court finds these facts pertinent to the question of jurisdiction.

ECF No. 37, at 21:1-7.

Plaintiff's RFP No. 25 follows directly from this portion of the August 2025 Order. It seeks "agreements between" Merck and "any" third parties "regarding online advertising or marketing that are RELATED TO data sent to, held by, or received from any DATA COMPANIES." The FAC alleges that Merck is profiting and receiving commercial value by the transmission of data of visitors to the Merck.com Website, including Plaintiff, to the DATA COMPANIES. ECF No. 16 (FAC), ¶¶ 1, 56, 58. Plaintiff alleges that the transmission to the DATA COMPANIES constitutes unlawful *interception*. As the factual questions the Court identified above were in its view "pertinent" to the issue of personal jurisdiction, and the "underlying contracts" might "answer" the questions, it follows that the agreements sought by RFP No. 25 were plainly discoverable under the August 2025 Order – and Merck should have produced them.

On December 19, 2025, Merck filed the Declaration of Christine LaCreta, a marketing executive at the company, in support of its Motion to Dismiss the SAC. *See* (ECF No. 47-1) (the "LaCreta Declaration"). The LaCreta Declaration reveals the names of the third-party entities referenced in Mr. Bakewell's statement to the Court discussed in the August Order, that interface between Merck and the DATA COMPANIES (i.e., Meta/Facebook, Google/DoubleClick, X/Twitter and LinkedIn): Team Frontiers, Initiative Media LLC, WordPress and SHI International. *See id.*, at ¶¶ 4, 17, 26.

Notably, as further addressed below, Merck's response to RFP No. 25 includes no explanation of how RFP No. 25 was overbroad with respect to agreements between Merck and Team Frontiers, Initiative Media LLC, WordPress and SHI International, the entities that were Merck's counterparties to the "underlying contracts" that the Court deemed to be discoverable.

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

2.    *Merck's Objections to RFP No. 25 are Boilerplate and Meritless.*

Merck's objections to RFP No. 25 based on overbreadth and undue burden are boilerplate objections because they do not explain how the RFP is overly broad, or how it would be unduly burdensome for Merck to comply with the RFP.  Merck's objections explained that RFP No. 25 "was overly broad, unduly burdensome, and oppressive [ . . . ] to the extent [it] seeks '[a]ny agreements' between Merck and 'any entities' regarding online advertising or marketing…"  The reason why this statement does ***not*** explain Merck's overbreadth, undue and oppressive objections ***is that it misstates RFP No. 25.*** Under the terms of the Request, an agreement about "online advertising or marketing" would only be responsive ***if it also "RELATED TO data sent to, held by, or received from any DATA COMPANIES***…". This limitation within RFP No. 25 follows Judge Frimpong's statement in the August 2025 Order that identified as relevant to the personal jurisdiction inquiry, "whether and how these third-party data collectors [i.e., the DATA COMPANIES] are receiving Escobedo's data information." ECF No. 37, at 21:6-7.

Thus Merck failed to provide any facts to support its overbreadth and undue burden objections.  They were therefore "boilerplate":

> Boilerplate objections regarding relevance, overbreadth, and burden are legally insufficient ***unless supported by specific facts to support those objections***. Defendant provides no such support to these objections. As courts have repeatedly held, "[w]here the responding party provides a boilerplate or generalized objection," the "objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *Sherwin-Williams Co. v. JB Collision Servs. Inc.*, 2014 U.S. Dist. LEXIS 93368, 2014 WL 3388871, at *2 (S.D. Cal. Jul. 9, 2014).

*ML Prods., Inc. v. Ninestar Tech. Co. Ltd.*, No. 5:21-cv-01930-MEMF (DTB), 2025 LX 680179, at *26 (C.D. Cal. Dec. 4, 2025).

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS        2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

Boilerplate objections are also a violation of this Court's rules.  *See* Standing Order on Discovery Disputes, (MARx), Paragraph 4 (2:14-15, 21-23) ("Parties responding to document requests shall not use boilerplate objections that violate Rule 34(b)(2), as amended in 2015" and "Conclusory objections based on… overbreadth without any basis in fact ***shall be summarily rejected and/or deemed waived***). Rule 34(b)(2)(B) states (emphasis added) "For each item or category, the response must [ . . . ] state with specificity the grounds for objecting to the request, ***including the reasons***."  Here, Merck did not provide any reasons.  In particular, its response to RFP No. 25 failed to explain how a request that included the very contracts that Judge Frimpong stated would answer key questions relating to personal jurisdiction within its ambit, was overbroad ***as to those contracts.***  One explanation for this could be that counsel for Merck had not yet received or reviewed the contracts in question by the time it had to respond to RFP No. 25.

Further, in light of the explicit discussion of the "underlying contracts" in the August 2025 Order, there was no obvious basis for objecting that any responsive documents were not relevant to the issue of personal jurisdiction, as Merck did.  Merck's response could have included a statement that Merck would comply with RFP No. 25 in part by producing agreements responsive to the Request that were also referenced in the August 2025 Order. Or it could have included a statement explaining that *and why* the "underlying contracts" referenced in the August 2025 Order do not fall within RFP No. 25.

***Moreover, these are things that the parties could have discussed in a meet and confer in the days following service of Merck's responses.  However, Merck's response to RFP No. 25 made it clear that Merck would not meet and confer with Plaintiff***: It contained the following statement:

> Escobedo waited until September 17, 2025 (28 days after the Court's Order) to serve her Requests which (among other things) are overbroad, unduly burdensome, and way beyond the limited jurisdictional discovery the Court allowed as more fully explained in and throughout Merck's Objections. Merck timely

17

responded to the Requests on October 17, 2025 (30 days after service) as is proper pursuant to Federal Rules of Civil Procedure 33 and 34. As such, ***the time for Escobedo to complete the limited jurisdictional discovery allowed by the Court expired, and Escobedo cannot resurrect or fix her defective and time-barred Requests.***

Plaintiff was entitled to "take" jurisdictional discovery ***until October 19, 2025***. If meeting and conferring was required to be completed by that date under the August 2025 Order, it still could have occurred at that point. However the above-quoted statement advised Plaintiff's counsel in advance that Merck was refusing to negotiate during the remaining 2 days of the 60-day window. Merck's refusal to meet and confer before October 19, 2025 was a bad faith effort to run out the clock.

Merck's additional objections to RFP No. 25 were meritless. First, Merck's objection on privilege grounds makes no sense, as the Requests sought contracts between it and "third parties." Merck's objection to the Request based on Merck's concerns about confidentiality and sensitive business information was not a valid basis upon which to unequivocally refuse production of responsive agreements, since there was no suggestion that Plaintiff would refuse to enter into a standard stipulated protective order.

> 3. *Evidence of Merck's Bad Faith in Refusing to Comply With RFP No. 25.*

Correspondence between counsel for the parties dating from prior to October 17, 2025, the date counsel for Merck, Wilkie Farr & Gallagher, LLP, served Merck's response to RFP No. 25, supports the conclusion that Wilkie Farr refused to produce any agreement responsive to the Request because it did not have sufficient time to obtain the documents from its client, to review them or to obtain the client's consent to produce them. On October 3, 2025, Wilkie Farr requested an extension of time – from October 17, 2025 to December 2, 2025 – in which to respond to Plaintiff's jurisdictional discovery requests, including RFP No. 25. *See* Decl. of J. Evan Shapiro in Support of Plaintiff Sarah

18

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS        2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

Escobedo's Motion for Sanctions, ¶ 6; *id.,* Ex. C (email correspondence between counsel), at 10.  In his email dated October 3, 2025 requesting the extension, Eric Bakewell of Wilkie Farr & Gallagher LLP, counsel for Merck, stated (emphasis added): "As you know, the associate working on this case (Emily Horak) recently left Willkie, and ***the relevant client contacts have been/are out of the office for a material amount of time***."  *Id.*  Plaintiff's counsel rejected the proposed extension.  *See id.*, at 1-10.  Plaintiff's refusal to grant the extension appears to have angered and frustrated counsel for Merck considerably.  *See id.*  It is in this context that counsel for Merck served the objections to RFP No. 25, and failed to agree to comply with RFP No. 25 to the extent that it called for the production of the "underlying contracts" discussed by Judge Frimpong in the August 2025 Order.

It thus appears that counsel for Merck had expected to receive an extension, and needed one before it could gather, review and produce to Plaintiff any of the agreements referenced in the August 2025 Order.  Based on its inability to produce any within the 60-day window, counsel opted to respond to RFP No. 25 with objections only.  A party's inability to respond to discovery within the time allotted by the Federal Rules of Civil Procedure, or to comply with specific production requests, does not form the basis of a proper objection to discovery.  The August 2025 Order spelled out exactly what agreements the Court was permitting discovery into, and limited discovery to a 60-day window.  Counsel for Merck could have consulted with its client in late August to start the collection of the agreements for review to prepare for their possible production by October 19, 2025, the last day of the 60-day window. Apparently it had not done so by October 3, 2025, when Mr. Bakewell represented his client contacts had had limited availability.

***Notably, Mr. Bakewell does not deny in his Declaration submitted in connection with this Motion that he had insufficient time to coordinate with his client contacts to obtain or review the contracts at issue in this Motion prior to responding to October 17, 2025 when Merck's response to RFP No. 25 was due; and that because of this time crunch,  he simply issued blanket (and boilerplate) objections to RFP No. 25.***  (This all logically follows from Mr. Bakewell's request two weeks before Merck's responses were

due) for *a 6 week extension of time* to respond to RFP No. 25 and Plaintiff's other discovery. Given this Court's emphasis on the importance of the 60-day time limit on Plaintiff's jurisdictional discovery, ***this was plainly bad faith conduct***.  Mr. Bakewell knew that is expedient, boilerplate, blanket objects to RFP No. 25 would run out Plaintiff's clock.

Plaintiff contends that issuing blanket objections to RFP No. 25, and deciding not to offer to comply to any extent with the Request, constitutes bad faith.  Rather than comply with the Request to the extent that it covered the "underlying contracts" specifically identified by Judge Frimpong, even though doing so would contravene Fed. R. Civ. P. 34(b)(2)(B), counsel for Merck chose to deny Plaintiff the discovery.  They did so with the hope or expectation that the case would be dismissed as a result.

> 4.       *Plaintiff is Entitled to Make a Motion for Sanctions Under Fed. R. Civ. P. 37(b)(2)(A).*

The August 2025 Order's discussion of Plaintiff's 60-day window to take jurisdictional discovery from Merck is devoid of any mention of motion practice under Rule 37(b)(2)(A). Moreover, to the extent that the Court has determined that Judge Frimpong intended to incorporate her rules concerning fact discovery cut-offs generally into the August 2025 Order, her rules state: "[A]ny motion challenging the adequacy of discovery responses must be filed timely, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date, if the motion is granted."  *See* U.S. District Judge Maame Ewusi-Mensah Frimpong's Order Setting Scheduling Conference, Shapiro Decl. Ex. D (the "Scheduling Order"), at 5:16-21. The section of Judge Frimpong's Scheduling Order addressing the "discovery cut-off" does not expressly discuss motions for discovery-related sanctions under Rule 37.  Moreover, such motions do not challenge the "adequacy of discovery responses."  Rather they are based on a "fail[ure] to obey an order to provide or permit discovery …". Fed. R. Civ. P. 37(b)(2)(A).  Accordingly, there is neither an order nor a rule precluding Plaintiff from making this Motion.

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS            2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

5.    *An Award of Sanctions Against Merck Under Fed. R. Civ. P. 37(b)(2)(A)(i-ii) Here Would Be "Just" and Relate to the Claims at Issue.*

Rule 37(b)(2)(A) states in pertinent part:

If a party [ . . . ] fails to obey an order to provide or permit discovery, [ . . . ] the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

Here, Plaintiff seeks an order providing that: (1) Plaintiff's allegation that Merck facilitates transmission to the "DATA COMPANIES" of data relating to California visitors to the Website in connection with such visitors' use of the Website's search bar for profit and/or its financial or commercial benefit, and as a part of its business model, be taken as established for purposes of the action; and (2) Merck be prohibited from opposing the allegation with evidence, and from opposing the Court's personal jurisdiction over it for purposes of Plaintiff's two claims in the action.

"A sanction under Rule 37(b)(2) must be 'just' and must relate specifically to the particular claim at issue in the order to provide discovery." *United States v. Peters*, No. 2:24-cv-0287-WBS-CKD, 2026 U.S. Dist. LEXIS 79095, at *9-10 (E.D. Cal. Apr. 10, 2026) (citing *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (citation omitted)). Here, the sanctions Plaintiff seeks meet these standards.

The requested sanctions would be just because Merck intentionally withheld discovery from Plaintiff the Court expressly permitted Plaintiff to take – namely the "underlying contracts" that the August 2025 Order explained would be central to the

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

Court's analysis of "whether and how [the DATA COMPANIES] are receiving [Plaintiff]'s data information," and "whether Merck is profiting or receiving any sort of commercial value as [Plaintiff] alleges." ECF No. 37, at 21:4-6. *It did so because counsel for Merck had insufficient time to coordinate with its client contacts, so figured it would be better off simply objecting to RFP No. 25.* Accordingly, it would be just for the Court to assume that had Plaintiff received the contracts improperly withheld by Merck, she would have been able to demonstrate that code on the Website facilitated the transmission of visitor data to the DATA COMPANIES for Merck's marketing purposes, and for Merck's financial or commercial benefit, as part of Merck's business model.[1]

Plaintiff anticipates that Merck may contend that her allegation about Merck's business model and the benefits it receives is not relevant to the "express aiming" requirement for personal jurisdiction because it does not differentiate between Website visitors from California and visitors from other places. This contention is unavailing, for two reasons. First, in the August 2025 Order, the Court acknowledged that under Ninth Circuit precedent, Plaintiff is not required to show that Merck engaged in "differential targeting" at visitors in California to establish personal jurisdiction over Merck. ECF No. 37, at 15:14-17 (quoting *Briskin v. Shopify, Inc.*,135 F.4th 739, 757 (9th Cir. 2025) (en banc)). Second, the August 2025 Order indicated that Plaintiff's establishing for purposes

---

[1] In her opposition to Merck's Motion to Dismiss the Second Amended Complaint in this action, Plaintiff submitted evidence of Merck's marketing of its clinical trials for its pharmaceuticals on the platforms of at least 2 of the DATA COMPANIES – LinkedIn and Meta (Facebook), and demonstrated that such marketing is a central component of Merck's business model. *See* ECF No. 55, at 6:1-16, Exs. 13, 14 and 16; ECF No. 57, at 6:6-14, 8:9-21, 10:15-20, 19:22-20:3. As the U.S. Food and Drug Administration explains, "[c]linical trials, also known as clinical studies, test potential treatments in human volunteers to see whether they should be approved for wider use in the general population." https://www.fda.gov/drugs/development-approval-process-drugs/conducting-clinical-trials (last visited 4/20/2026). This fact is subject to judicial notice. *See, e.g., Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities.").

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

of Merck's motion to dismiss that "Merck knew where she was located at the time of extracting her data" (ECF No. 37 at 18:17-19), i.e., California (*see* ECF No. 16 (First Amend. Cplt.), ¶ 10; ECF No. 39 (Second Amend. Cplt.), ¶ 34), may be sufficient in tying Merck's intentional conduct underlying Plaintiff's claims to the state.

Further, the August 2025 Order addressed the question of personal jurisdiction over Merck with respect to both of Plaintiff's claims – one under California's Invasion of Privacy Act, Cal. Penal Code § 631(a), and one under California's Unfair Competition Law, Business and Professions Code §17200.  *See* ECF No. 37, at 10:2-3.  Judge Frimpong's order to permit discovery into the "underlying contracts" between Merck and the intermediaries between Merck and the DATA COMPANIES referenced both by Merck's counsel at oral argument, and in the August 2025 Order, therefore applied to both of Plaintiff's claims.  Both claims are based on the transmission of visitor (including Plaintiff's) data to the DATA COMPANIES.

## D.    Defendant's Position

Escobedo's motion for sanctions based on Merck's objections to RFP No. 25 should be denied.  This improper motion fails for multiple independent reasons including: (1) The August 20 Order is not a discovery order requiring production of documents; (2) Magistrate Judge Rocconi already denied Escobedo's motion to compel which encompassed RFP No. 25; (3) Merck has not engaged in any bad faith conduct related to Escobedo's discovery requests; (4) Merck already offered to produce the agreements at issue in this motion; and (5) evidentiary sanctions are improper.

### 1.    Sanctions Are Not Justified Because The August 20 Order Did Not Order The Production Of Documents

There has never been an order in this case directing or compelling Merck to produce documents responsive to RFP No. 25.  Bakewell Decl., ¶ 17.  Therefore, Escobedo has no basis on which to request sanctions in connection with RFP No. 25.

Rule 37(b)(2)(A) authorizes sanctions only where a party "fails to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).  But, the August 20 Order simply

does not qualify as an order sufficient to justify sanctions under Rule 37(b)(2)(A) where it merely granted Escobedo 60 days to conduct limited jurisdictional discovery but did not order Merck to produce any documents. *See Global Master Int'l Group v. Esmond Natural*, No. 2:19-cv-10360-RGK-PLA, 2021 U.S. Dist. LEXIS 148023, *12 (C.D. Cal. Apr. 30, 2021) (finding magistrate's order denying motion for evidentiary sanctions was not clearly erroneous where no prior motion to compel had previously been issued). There must be a "prior court order requiring production" when attempting to invoke evidentiary sanctions, as Escobedo does here. *Id*. ("With Defendants' nonproduction of documents. Plaintiffs only argue that there is no per se rule requiring motions to compel before seeking sanctions. Even assuming that were true, when the proposed sanctions seek to exclude evidence or include adverse inferences to the jury, generally a prior court order requiring production is a necessary prerequisite to invoking the sanctions."); *Susilo*, 2012 U.S. Dist. LEXIS 195329, at *4 ("Although defendants are not satisfied with plaintiff's discovery disclosures, and plaintiff's discovery responses may be inadequate, defendants have never moved to compel discovery with respect to plaintiff's damages computation or any other matter. Courts have found that a prior court order requiring production is [generally] a necessary prerequisite to invoking . . . the sanction of exclusion.").

The Court's August 20 Order: (1) dismissed Escobedo's FAC for lack of personal jurisdiction; (2) permitted "limited jurisdictional discovery;" and (3) set a schedule requiring Escobedo to complete discovery within 60 days of the Court's August 20 Order (by October 19, 2025). *See* Bakewell Decl., Ex. 1 at 22:8-12. Critically, what the August 20 Order did not do was order Merck to produce any documents. *Id*. at 22:2-15 (demonstrating that no portion of the Court's actual Order required Merck to produce documents). This is hardly surprising as the August 20 Order was issued in connection with Merck's motion to dismiss the First Amended Complaint, not a motion to compel. *Id*. Moreover, Escobedo had not yet served the request for production at issue in her motion, RFP No. 25, at the time the August 20 Order issued. Shapiro Decl., Ex. A (showing service date of September 17, 2025). Merck struggles to see how an order on a motion to dismiss

24

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

could form an independent obligation to produce documents in response to a request for production that was not yet in existence.

The Court's general reference to the types of documents that may be relevant to a jurisdictional analysis does not qualify as an order to produce documents that could give rise to a motion for sanctions and granting this motion would reward Escobedo for her failure to diligently move to compel. *See Global Master Int'l Group*, 2021 U.S. Dist. LEXIS 148023, at *14 ("[I]mposing the requested sanctions would essentially reward Plaintiffs for their untimeliness. By moving for sanctions instead of seeking to compel discovery—as they should have—Plaintiffs would attain a windfall as their requested sanctions are expansive and include exclusion of testimony and multiple adverse inferences that would stack all the cards against Defendants."). Because the August 20 Order did not direct Merck to produce any documents, it is not an order that supports sanctions for purposes of Rule 37(b)(2)(A), and Escobedo's attempt to recharacterize it as such is, at best, creative.

### 2. Sanctions Are Not Justified Where This Court Already Denied Escobedo's Motion To Compel Related To RFP No. 25

Escobedo's motion for sanctions related to RFP No. 25 is improper as the Court already denied a motion to compel related to this request. Bakewell Decl., Ex. 2.

Escobedo served her second set of requests for production (which included RFP No. 25) on September 17, 2025 – 28 days after the Court's August 20 Order. Shapiro Decl., Ex. A. Escobedo unreasonably delayed her pursuit of the discovery despite the August 20 Order setting a clear 60-day deadline to complete discovery. She waited until the very last moment to serve her second set of requests for production (despite Federal Rule of Civil Procedure 34 giving Merck 30 days to respond and there being nothing in the August 20 Order foreclosing Merck from asserting valid objections). Bakewell Decl., Ex. 1. Merck thus responded to the discovery and timely objected on October 17, 2025. Shapiro Decl., Ex. B. One of the grounds on which Merck based its objections to the discovery, including RFP No. 25, was that Escobedo delayed in serving discovery and that the discovery period

25

had closed. *Id*. Escobedo thus moved to compel on February 18, 2026, including with respect to RFP No. 25. Bakewell Decl., ¶ 15.

On April 6, 2026, the Court denied Escobedo's motion to compel in its entirety, finding that the motion was "plainly untimely" because the jurisdictional discovery period closed on October 19, 2025, and Escobedo did not file the motion until February 18, 2026. *Id*., Ex. 2. The Court observed that Merck timely served objections and that "given [Escobedo's] delay in serving discovery requests after the dismissal of the FAC and issuance of the Order, [Escobedo] could not realistically have filed a motion to compel prior to the close of jurisdictional discovery." *Id*., at 3. The Court further noted that it lacked the authority to reopen the jurisdictional discovery period set by the District Court Judge and ***Escobedo never sought an order extending or reopening the discovery period***. *Id*., at 4. The Court correctly denied Escobedo's motion to compel in its entirety. *Id*. Escobedo's inaction cannot be attributed to Merck and certainly cannot be the basis for a sanctions motion against Merck.

Escobedo (having lost on her motion to compel) now seeks to relitigate the same discovery dispute through the guise of a sanctions motion. This Court should not permit it. Escobedo's sanctions motion is nothing more than an improper motion for reconsideration of the Court's denial of her motion to compel. The Court already considered and rejected Escobedo's arguments regarding RFP No. 25 when it denied her motion to compel in its entirety on April 6, 2026. *Id*. Escobedo presents no new facts and no new law that would warrant revisiting that ruling. She simply repackages the same arguments under the label of "sanctions" in an attempt to obtain a different outcome.

Again, because no order compelling production of documents responsive to RFP No. 25 has ever been entered in this case, there can be no failure to comply with such an order, and no basis for sanctions under Rule 37(b)(2)(A), especially considering Escobedo's failed motion to compel.

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS       2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

### 3. Sanctions Are Not Justified Because Merck Did Not Engage In "Bad Faith" Conduct With Respect To The Discovery Disputes

Escobedo fails to establish that Merck acted in bad faith at any point during the parties' discovery disputes. Sanctions are not "just" or "proportionate" within the meaning of Rule 37(b)(2)(A) where Merck acted in good faith, complied with its discovery obligations at every turn, and has bent over backwards to reach an agreement on discovery in this case. *Chandler Gas & Store Inc. v. Treasure Franchise Co. LLC*, No. CV-23-00400-PHX-KML, 2025 U.S. Dist. LEXIS 86897, *8 (D. Ariz. May 7, 2025) (explaining that the central factor in an order granting sanctions is justice which requires "some proportionality between the misconduct alleged and the sanction."). Specifically: (1) Merck asserted substantive and proper objections to RFP No. 25 which sweeps far more broadly than the limited jurisdictional discovery permitted by the August 20 Order; (2) Merck engaged in extensive meet and confer efforts in writing, over the phone, and in person from October 2025 through February 2026 related to Escobedo's second set of discovery requests; (3) Merck offered to produce the contracts with Team Frontiers, Initiative Media LLC, WordPress, and SHI International to the extent such agreements exist and were in effect from October 2023 to the present, but Escobedo rejected those offers; and (4) Merck's initial request for an extension of time to respond to Escobedo's requests for production does not indicate bad faith. Bakewell Decl., ¶¶ 4-8.

#### a. Merck Complied With Court Orders In Good Faith

Merck's conduct throughout this litigation has been guided by and consistent with the Court's Orders at every stage. The August 20 Order placed the burden squarely on Escobedo to request and pursue jurisdictional discovery within a limited 60-day window. *See id.*, Ex. 1 at 22:8-12. That Order did not impose any affirmative production obligation on Merck; it merely permitted Escobedo to seek limited jurisdictional discovery. *Id.* Merck responded to Escobedo's requests in the timeframe required by the Federal Rules and asserted valid objections.

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

Moreover, the Court's denial of Escobedo's motion to compel on April 6, 2026 confirmed the reasonableness of Merck's position. The Court found Escobedo's motion "plainly untimely" and noted that Escobedo never sought an order extending or reopening the discovery period. *Id.*, Ex. 2. It is not bad faith for Merck to maintain a legal position that the Court itself subsequently adopted. To the contrary, the denial of the motion to compel validated Merck's objections and its understanding of the scope of permissible discovery. Merck was entitled to rely on the Court's rulings in determining its obligations, and it did so reasonably and in good faith.

> b.    *There Is No Bad Faith Where Merck's Objections To RFP No.*
> *25 Are Substantive And Proper*

RFP No. 25 seeks "[a]ny agreements between [Merck] and any entities regarding online advertising or marketing that are RELATED TO data sent to, held by, or received from any DATA COMPANIES or any of their parent or subsidiary companies in effect during the RELEVANT PERIOD." Shapiro Decl., Ex. A. Merck objects to the request as "seeking information beyond the scope of the Court's August 20, 2025 Order granting limited jurisdictional discovery regarding the relationships between Merck and the third-party data collectors that relate to the interception and data collection activities as alleged in the FAC." *Id.*, Ex. B at 16:22-25. Merck explains that the Request is not carefully crafted or narrowly tailored to comply with the Court's August 20 Order because it sweeps far more broadly, seeking *any agreement* with *any entity* regarding online advertising or marketing. *Id.*, at 16:25-17:2. RFP No. 25 could logically reach marketing and advertising agreements between Merck and third parties that have no relation to Merck.com and no relation to the search bar on Merck.com (which is what purportedly caused Escobedo's harm). This objection clearly supports Merck's position that the request is overly broad and unduly burdensome, as it could cover limitless agreements with no connections to Escobedo's claims.

Additionally, Escobedo's claim that Merck's objection does not explain why the request is overbroad or unduly burdensome is a red herring. Escobedo asserts that Merck

28

does not explain its objections because it misstates RFP No. 25 by not specifically referring to the part of the request that limits the requested agreements to online advertising or marketing "*RELATED TO data sent to, held by, or received from any DATA COMPANIES.*"  But, Merck's objection clearly applies to the request as a whole.  Merck objects on the grounds that "any agreements" with "any entities" seeks information beyond the scope of the Court's August 20 Order granting limited jurisdictional discovery.  Facts relevant to jurisdiction have to have some nexus to the complained of conduct.  *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (requiring "an affiliation between the forum and the underlying controversy").  Therefore, by stating that the request is beyond the scope of the August 20 Order, Merck is objecting that the agreements (even those related to data companies) could cover agreements that have no relation to Escobedo's claims (*i.e.*, no connection to the Merck.com website or the search bar on Merck.com).  Merck's objections to RFP No. 25 specifically identify the grounds for each objection, explain that the request exceeds the scope of the August 20 Order, cite the specific portions of the August 20 Order that limit permissible discovery, and identify the specific language in the request that renders it overbroad (*i.e.*, "[a]ny agreements" with "any entities").

Escobedo further contends that there was "no obvious basis" for Merck's relevance objection given the August 20 Order's discussion of the "underlying contracts with other third-party entities relating to the interception of data collection and the other activities alleged in the FAC."  *See* Bakewell Decl., Ex. 1 at 21:1-4.  This argument conflates the narrow category of contracts mentioned in the August 20 Order as potentially relevant with the far broader category of documents sought by RFP No. 25 ("any agreements" between Merck and "any entities" regarding "online advertising or marketing" that are "RELATED TO" data sent to, held by, or received from the "DATA COMPANIES").  To the extent RFP No. 25 reaches agreements with no connection to the harms alleged by Escobedo in the FAC, Merck's relevance objection is entirely proper.  Merck was not obligated to parse the request and agree to comply with some hypothetical narrower version of it.  It is the

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

Case 2:24-cv-10394-MEMF-MAR Document 74-1 Filed 05/06/26 Page 30 of 35 Page ID #:2584

propounding party's burden to draft discovery that is properly tailored to the scope of permissible discovery. *See Gomez Cabrales v. Aerotek, Inc.*, No. EDCV 17-1531-JGB-KKx, 2018 U.S. Dist. LEXIS 77705, *7 (C.D. Cal. May 8, 2018) (Noting that the party moving to compel bears the burden of demonstrating relevance). There is no requirement that a responding party rewrite a defective discovery request on behalf of the propounding party. Merck objects to RFP No. 25 as written because, as written, it exceeds the scope of the August 20 Order. That Merck did not volunteer to produce a subset of documents in response to an overbroad request does not transform its objections into "bad faith" or provide a basis for sanctions.

Additionally, Merck's objections are not "boilerplate" because the same objection is asserted to multiple requests. That repetition is simply a function of Escobedo serving discovery that is plagued with overarching defects. Merck provided substantive objections to Escobedo's patently overbroad requests. There are no provisions in the August 20 Order allowing Escobedo free reign to seek wide-ranging discovery regarding any aspect of Merck's relationship with any entities about advertising and marketing. *See generally* Bakewell Decl., Ex. 1. The August 20 Order may have offered guidance on what type of discovery was permissible, but it always was Escobedo's responsibility to pursue narrowly tailored discovery which she chose not to do. The Court gave Escobedo a discovery roadmap (which she ignored), and she now blames Merck for her discovery shortcomings. Merck did not need to expend any energy to "run out the clock" with "boilerplate objections" as it was Escobedo who inexplicably wasted substantial amounts of time by: (1) waiting to serve discovery requests despite having the looming discovery cutoff set by the Court; (2) waiting to meet and confer even though the Court set a deadline for filing the First Amended Complaint; (3) waiting to file a motion to compel despite Merck's position being clear and consistent for months; and (4) doing nothing to extend any of the Court-set deadlines for taking discovery or filing a Second Amended Complaint.

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

           *c.      Merck's Request For An Extension Of Time To Serve Responses To Escobedo's Discovery Requests Does Not Indicate Bad Faith.*

The fact that Merck requested an extension of time to respond to the second set of discovery requests, including RFP No. 25, and then ultimately served objections does not equal bad faith. Escobedo's speculative allegations to the contrary must be disregarded, as they have no basis in fact and Escobedo does not have personal knowledge as to Merck's decision making related to how to respond to Escobedo's overbroad discovery requests.

Merck's counsel initially requested an extension of time to respond to Plaintiff's discovery on October 3, 2025 due to: (1) the recent departure of the Willkie associate who appeared in this proceeding; and (2) the unavailability of Merck's client contacts who had been identified at that point as potentially having some knowledge about the issues presented by Escobedo's discovery. *See* Shapiro Decl., Ex. C. This extension would have given the parties more time for discovery and, of course, for Escobedo to file her amended complaint.

Escobedo's counsel inexplicably refused this straightforward extension request through a series of convoluted emails, despite multiple requests from Merck's counsel. *Id*. Accordingly, Merck moved forward with responding to discovery and timely objected on October 17, 2025 as is proper pursuant to Federal Rules of Civil Procedure 33 and 34. *See id*., Ex. B; Bakewell Decl., ¶¶ 4-7. Merck's decision to serve objections to Escobedo's discovery was not done in "bad faith" as Escobedo contends. Merck determined after careful legal analysis that the requests were entirely objectionable and went way beyond anything that could be deemed jurisdictional discovery as they sought discovery into the merits of the case in violation of the Court's August 20 Order. *Id*. Merck also met and conferred regarding these requests multiple times over the following months but the parties could not reach an agreement. *Id*., ¶¶ 8-10. There is no requirement under the law that Merck had to inform Escobedo of the deficiencies in her discovery requests prior to Merck's October 17 response deadline. Merck acted reasonably and within the confines

of the law. *See* Fed. R. Civ. P. 33; Fed. R. Civ. P. 34. Merck did not engage in any sanctionable conduct by requesting an extension and then serving objections, and it is asinine for Escobedo to suggest otherwise. Bakewell Decl., ¶¶ 5-7. Merck's objections are substantive and proper, and would have continued to be proper even if Merck received an extension of time to respond. Merck did not serve objections in retaliation as Escobedo seems to believe, and there is absolutely no basis for the allegation that Merck intentionally withheld responsive documents because Merck "figured it would be better off" submitting legitimate substantive objections to Escobedo's requests. *Id*. Merck served what it believes to be valid objections in the face of overbroad and improper discovery requests. Escobedo is simply engaging in wrong and improper speculation regarding Merck's motives in order to shift the focus from her failure to act diligently in serving discovery.

> d.    *There Is No Bad Faith Where Merck Met And Conferred With Escobedo On Numerous Occasions And Offered To Produce Agreements*

Merck has engaged in extensive good-faith meet and confer efforts with Escobedo regarding RFP No. 25 and her other discovery requests despite the fact that discovery has closed and that Escobedo's requests exceeded the scope of permissible jurisdictional discovery. These efforts include: (1) in writing through various letters and email correspondence from at least October 2025 through present; (2) telephonic conferences on at least October 28, 2025, November 14, 2025, and December 23, 2025; and (3) in-person meetings on January 9, 2026. *See* Bakewell Decl., ¶¶ 8, 10.

Escobedo's attempt to characterize Merck's objection that her requests were "time-barred" as an "unequivocal refusal to meet and confer" is disingenuous and a gross mischaracterization. The statement in Merck's response that "the time for Escobedo to complete the limited jurisdictional discovery allowed by the Court expired, and Escobedo cannot resurrect or fix her defective and time-barred Requests" was a statement of Merck's legal position regarding the timeliness of Escobedo's discovery (a position that the Court subsequently vindicated when it denied Escobedo's motion to compel as

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS                2:24-cv-10394-MEMF-MAR
Error! Unknown document property name.

untimely).  *See id*., Ex. 2.  Stating a legal position in a discovery response is not a refusal to meet and confer.  And, as the record demonstrates, Merck in fact engaged in extensive meet and confer efforts with Escobedo following service of its objections.  *See id*., ¶¶ 8, 10.  Merck met and conferred in good faith notwithstanding its belief that Escobedo's requests were untimely and overbroad – the exact opposite of the conduct Escobedo describes.  Escobedo's allegations otherwise are a gross mischaracterization of events.

Even more critical is that Merck offered to produce contracts with Team Frontiers, Initiative Media LLC, WordPress, and SHI International to the extent such agreements exist and were in effect from October 2023 to the present.  *Id*., ¶ 12.  Merck's view is that the proposal to produce these agreements provided Escobedo with more than she was entitled to under the August 20 Order authorizing only limited jurisdictional discovery, but Merck offered it in the interest of resolving the discovery dispute.  *Id*., ¶ 13.  Escobedo rejected Merck's offer.  *Id*. ¶ 14.

Escobedo has now rejected Merck's compromise offers, lost on her motion to compel, and failed at every turn to pursue discovery with reasonable diligence.  She cannot now seek sanctions as a backdoor means of obtaining the very discovery that this Court has already determined she is not entitled to and that Merck already offered to produce.

### 4.    Escobedo's Requested Evidentiary Sanctions Are Improper

Escobedo improperly seeks a sanctions order establishing that Merck facilitates transmissions of consumer data to the Data Companies for a commercial benefit and as part of its business model.  *See* Joint Stip. at 20:11-17.  Additionally, Escobedo requests that Merck not be able to challenge that finding or the Court's personal jurisdiction over Merck.  The evidentiary sanctions Escobedo seeks under Rule 37(b)(2)(A)(i-ii) are improper and grossly disproportionate to the circumstances.  As an initial matter, no predicate for Rule 37(b)(2)(A) sanctions exists because there has been no order directing Merck to produce documents responsive to RFP No. 25.  The August 20 Order provides no such notice as it is not an order directing or compelling Merck to produce documents responsive to RFP No. 25.  *See* Bakewell Decl., Ex. 1; *Global Master Int'l Group*, 2021

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS                2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**

U.S. Dist. LEXIS 148023, at *12 (finding evidentiary sanctions improper where no prior motion to compel had issued).  Therefore, Escobedo has no basis on which to request sanctions.

Moreover, the specific sanctions Escobedo seeks (directing that her factual allegations be taken as established and effectively prohibiting Merck from opposing personal jurisdiction) are not "just" within the meaning of Rule 37(b)(2)(A).  A sanction under Rule 37(b)(2)(A) must be just and proportionate to the conduct involved.  *Chandler Gas & Store Inc. v. Treasure Franchise Co. LLC*, 2025 U.S. Dist. LEXIS 86897, at *8 (explaining that the central factor in an order granting sanctions is justice which requires "some proportionality between the misconduct alleged and the sanction.").  Merck fails to see how Escobedo's requested evidentiary sanctions can be just when Escobedo already lost her motion to compel with respect to RFP No. 25 (among others).  Further, Merck already agreed to produce the relevant agreements under RFP No. 25 to the extent they exist even though the Court never issued an order compelling the production of documents in this matter.  Escobedo's request that her factual allegations be taken as established to effectively prohibit Merck from opposing personal jurisdiction in this matter (after Merck already won a motion dismissing Escobedo's FAC for lack of personal jurisdiction) would be a manifest injustice and completely disproportionate.

Moreover, Merck was substantially justified in refusing to produce documents in response to RFP No. 25 as the request is entirely too broad and seeks documents well beyond the Court's August 20 Order.  *See* Bakewell Decl., Ex. 1; *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) ("[A] good faith dispute concerning a discovery question might, in the proper case, constitute substantial justification to reverse a Rule 37(b)(2) sanction.").  There is clearly a good faith dispute as the Court co-signed Merck's view that the discovery period has closed and Escobedo did not complete discovery within the allotted 60-day window in its April 6, 2026 Order denying Escobedo's motion to compel.  Bakewell Decl., Ex. 2.  Merck therefore has a substantial justification for its

34

objections to RFP No. 25, making sanctions inappropriate.   Escobedo's motion for sanctions should be denied in its entirety.

DATED: May 4, 2026                          **TAULER SMITH LLP**


                                            By:  /s/ J. Evan Shapiro
                                                 Robert Tauler, Esq.
                                                 J. Evan Shapiro, Esq.


                                            *Attorneys for Plaintiff Sarah Escobedo*


DATED: May 5, 2026                          **WILLKIE FARR & GALLAGHER LLP**


                                            By:  /s/ Eric J. Bakewell
                                                 Eric J. Bakewell, Esq.


                                            *Attorneys for Defendant Merck Sharp &
                                            Dohme LLC*

JOINT STIP. RE: PTF'S MOTION FOR RULE 37 SANCTIONS          2:24-cv-10394-MEMF-MAR
**Error! Unknown document property name.**